IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:18-CR-267-FL

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | ORDER |
| | ) | |
| ANTHONY GABRIEL JOHNSON, | ) | |
| | ) | |
| Defendant. | ) | |

This case comes before the court on remand from the district court for conduct of a further hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975) regarding Defendant's waiver of his right to counsel [DE-43] and on the Government's motion to terminate Defendant's *pro se* status [DE-45]. The court held a hearing on August 13, 2019, the date of Defendant's scheduled arraignment. [DE-48]. For the reasons that follow, the Government's motion is allowed.

## I. BACKGROUND

Defendant was indicted by a grand jury for conspiracy to distribute one kilogram of heroin in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 ("Count One") and for possession with intent to distribute 100 grams or more of heroin in violation of 21 U.S.C. § 841(a)(1) ("Count Two"). [DE-1]. If convicted, Defendant faces a significant term of imprisonment. *See* Am. Penalty Sheet [DE-38] (indicating the penalty on Count One is not less than ten years' and not more than life imprisonment, and the penalty on Count Two is not less than five years' and not more than 40 years' imprisonment).

At his initial appearance, Defendant was advised of the charges against him and the maximum penalties, and he indicated he understood them, although he expressed some disagreement regarding the drug quantity alleged in Count One. Defendant was advised of his

Constitutional rights, including his right to counsel, and the court appointed counsel to represent him. [DE-15].

At his detention hearing, Defendant was represented by counsel but expressed a desire to cross-examine the Government's witness. Defendant asked questions, some relevant and some improper, which appeared aimed at disputing the witness's testimony. The court cautioned Defendant that it was advisable for his attorney to question the witness but that he could continue at his own peril, and Defendant's counsel completed the cross-examination. Defendant also spoke in closing, which the court again advised against, and Defendant asserted his membership in the Moorish Science Temple and asked that his First Amendment rights be respected. Defendant's counsel also presented a closing argument. Defendant was detained pending arraignment and trial. [DE-29].

Defendant's arraignment was set for April 18, 2019, and on March 27, Defendant's counsel filed a motion for Defendant to proceed pro se with standby counsel. [DE-31]. On April 8, 2019, the court received a document from Defendant entitled Affidavit of Fact, which discussed his affiliation with the Moorish Science Temple of America and requested that "the Free National Constitution of the United States of America and the Divine Constitution and By-Laws of the Moorish Science Temple of America be upheld and respected." [DE-32]. The court held a hearing on April 18 on Defendant's motion to proceed pro se. [DE-36]. The court found, based on the statements of defense counsel, Defendant's conduct to date in the proceedings, and the court's colloquy with Defendant, that he had waived his right to the assistance of counsel and that his waiver was clear and unequivocal; knowing, intelligent, and voluntary; timely; and not for an improper purpose. [DE-37] at 4–5. The court appointed Defendant's counsel at that time to continue in the role of standby counsel. *Id.* at 5.

2

On June 6, Defendant appeared with standby counsel for his arraignment. [DE-39]. Defendant indicated he filed an Affidavit of Fact, had not received a response from the Government, and wanted the court to order the Government to respond. The court inquired as to the nature of the Affidavit of Fact and what relief, if any, Defendant was seeking from the court. Defendant's response was somewhat unclear; however, the Affidavit of Fact appears to assert that Defendant has been misidentified in this case because he is "Anthony Gabriel Johnson-*El*" and not "Anthony Gabriel Johnson," which he contends is a slave label and deprives him of his Constitutional rights. [DE-32]. The court admonished Defendant that to the extent he was using his pro se status to delay the case or abuse the process his right to self-representation could be revoked. In response to further questioning from the court, Defendant also indicated he wanted an extension of time to file a motion to dismiss. Over the Government's objection, the court allowed an extension to July 11 and continued the arraignment to August 13.

On June 17, Defendant filed a motion to dismiss, again asserting his identity theory related to his Moorish religion and seeking dismissal due to "fraud and denationalization." [DE-40]. The court denied the motion, finding it to lack a basis in fact or in law. [DE-43] at 2. The court also referenced Defendant's motion to allow him to wear a Moorish fez in court [DE-42] and expressed concern that Defendant was more focused on his courtroom garb than the charges against him at a critical juncture in the case. *Id.* at 3. The court reminded Defendant of the risks of proceeding without counsel, questioned whether Defendant "knows what he is doing and has eyes wide open in making the choice to represent himself," and remanded the case to the undersigned for a further *Faretta* hearing at the time of arraignment. *Id.* at 2–3.

Defendant filed a second motion to dismiss on June 28 and a motion for miscellaneous relief on August 5, in which he raised the same issues asserted in the prior motion to dismiss. [DE-

3

44, -46]. The court summarily denied the motions as spurious, incorporated its prior admonishments to defendant regarding his self-representation, and commended the *Faretta* issue to the undersigned for further consideration. July 2 & Aug. 12, 2019 Text Orders.

## II.   DISCUSSION

At the August 13 hearing the court heard from Defendant, his standby counsel, and counsel for the Government. The court began the hearing by attempting to ascertain whether Defendant was competent to proceed and understood the purpose of the hearing. When the court addressed Defendant as "Mr. Johnson" and asked him a question, he at first did not answer and then stated that the record should reflect his name is "Johnson-El." The court advised Defendant of his right to appointed counsel and to self-representation and engaged in a *Faretta* colloquy with Defendant. In response to the court's first question, Defendant again stated that his name was "Johnson-El" and then answered the court's questions. The court advised Defendant of the serious charges and severe penalties he faced if convicted, and Defendant indicated that he understood. The court advised Defendant that he was bound by the Federal Rules of Evidence and Procedure and questioned him as to his familiarity with them. Defendant indicated he had Rules Handbooks and was studying those materials. The court advised Defendant of the risks of self-representation and urged him to avail himself of court-appointed counsel, and Defendant stated that he wanted to continue representing himself. When asked why, Defendant responded that he was not representing himself to argue the charges but rather to argue that he had been improperly identified as "Johnson" rather then "Johnson-El," and the Government was engaged in "fraud and denaturalization." Defendant acknowledged that he had asserted the argument in previous court filings and indicated he would continue to assert it because it was the only argument he had.

4

The court next questioned standby counsel regarding his experience with Defendant. Standby counsel stated that he had met with Defendant a few times, discussed the order allowing Defendant to proceed pro se, answered the few questions Defendant had, and advised Defendant as to what he should and should not do to more effectively represent himself. At their most recent meeting on July 23, standby counsel warned Defendant that his spurious filings may interfere with his continued self-representation and tried to focus Defendant on the facts of his case, but Defendant continued to focus on his identity argument. Standby counsel indicated his intent to advise Defendant that his identity-related legal theory would not be relevant at trial, other than for preservation of an appeal, but also stated that he would not be surprised if Defendant persisted with the argument at trial. Standby counsel believed Defendant to be mentally competent and indicated he had reasonable interactions and communications with Defendant.

The Government argued that Defendant's continued filing of frivolous motions repeating the arguments asserted in the Affidavit of Fact and challenging the court's jurisdiction due to his misidentification forecasted Defendant's intent to continue pressing those arguments. The Government believed Defendant's goal was to obstruct the court proceedings by filing repeated frivolous motions and pointed to Defendant's statement at the hearing that he only intended to address the identity issue and not the facts of his case. Thus, the Government asked that Defendant's right to self-representation be revoked.

The court again addressed Defendant, expressing concern that he continued to press issues not relevant to his defense. Defendant explained that he was only arguing that his identity is "Johnson-El," the Government was "denationalizing" him and trying to take away his identity in violation of his Constitutional rights by not referring to him as such, he was not challenging the court's jurisdiction over him, and he was not arguing the facts of the case.

Standby counsel then argued that under *Faretta* a defendant's technical legal knowledge is not relevant to determining whether he has knowingly exercised the right to defend himself, and the court should focus on whether Defendant had engaged in deliberate disruption. Standby counsel suggested the court should not substitute its judgment for Defendant's in waiving his right to counsel despite the fact that it may not ultimately be in his best interests due to his insufficient legal ability. Standby counsel also pointed out that, historically, legal arguments once considered to be frivolous were later adopted, although he conceded that he would not and could not pursue Defendant's arguments, providing further reason for the court to allow Defendant to continue his self-representation to pursue his legal theory. Standby counsel also suggested that it was premature to revoke Defendant's self-representation at this point, because the filing of spurious motions is insufficient to justify the deprivation of his self-representation right. Instead, the court should wait until trial to see how Defendant conducts himself where Defendant had not been argumentative or physically disruptive during any proceedings to date. In response, the Government argued the court need not wait until trial to revoke Defendant's self-representation where he has made several frivolous filings, has continued to press those arguments at hearings before the court, and has given no indication he will stop his obstructionist conduct.

The court concluded the *Faretta* hearing and asked Defendant if he was ready to proceed with his arraignment. Defendant indicated that he was not prepared to proceed because his argument regarding identity was "not being recognized" and not being treated equally to the Government's case against him. The Government requested that a plea of not guilty be entered for Defendant given his refusal to proceed with the scheduled arraignment and the lack of grounds for a continuance. Standby counsel raised the issue of Defendant having the right to an arraignment before a district judge, and Defendant stated he would not waive that right and

6

declined to proceed before the undersigned, as was his right. Accordingly, the arraignment was continued to the September 17 term of court before United States District Judge Flanagan.

The Sixth Amendment provides criminal defendants with both a right to the assistance of counsel and an implied right to self-representation. *Faretta*, 422 U.S. at 807, 819. A Defendant's waiver of the right to counsel must be (1) clear and unequivocal; (2) knowing, intelligent, and voluntary; and (3) timely. *United States v. Jennings*, No. 5:18-CR-318-FL-1, 2019 WL 1338388, at *1 (E.D.N.C. Mar. 25, 2019) (citing *United States v. Frazier-El*, 204 F.3d 553, 558 (4th Cir. 2000)). "Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." *Faretta*, 422 U.S. at 835 (citations and internal quotation marks omitted).

Some courts have held that the filing of frivolous motions alone may not be sufficient cause to deny a defendant's right to self-representation, *see United States v. Smith*, 830 F.3d 803, 809–10 (8th Cir. 2016) (finding the district court erred in denying a defendant's right to self-representation based on the defendant's desire to advance improper arguments his counsel would not raise). However, there is no doubt that the court "may terminate self-representation by a defendant who deliberately engages in serious and obstructionist misconduct," *Faretta*, 422 U.S. at 834 n.46. The Fourth Circuit has instructed that the right of self-representation may not be used as a "tactic for delay, for disruption, for distortion of the system, or for manipulation of the trial process." *United States v. Frazier-El*, 204 F.3d 553, 560 (4th Cir. 2000) (internal citations omitted).

Here, the court again finds that Defendant's waiver of his right to counsel was clear and unequivocal; knowing, intelligent, and voluntary; and timely. No one has questioned Defendant's mental competence, and the court finds no reason to doubt it. Defendant was never waivered from his express desire to represent himself. After being advised again of the dangers and disadvantages of proceeding without counsel, Defendant affirmed his decision.

Defendant's right to self-representation, however, is not absolute, and his singular focus on pressing the identity argument is obstructing the proceedings against him. At the prior *Faretta* hearing on April 18, Defendant denied any intent to obstruct the proceedings or to assert frivolous positions, i.e., that he was outside the court's jurisdiction. Defendant's June 6 arraignment was continued to allow him to file a motion to dismiss. Defendant filed his motion to dismiss asserting his identity argument, and the court rejected it. Defendant then filed a second motion to dismiss on the same grounds, which the court denied, followed by a motion the court construed as one for reconsideration of the identity theory, and the court denied it as well. Nevertheless, at Defendant's August 13 arraignment he was not prepared to go forward because he contended his identity theory was "not being recognized" and not being treated equally to the Government's case against him. Furthermore, Defendant unequivocally indicated he would continue to press this argument rather than addressing the facts of the case. "Repeated, frivolous challenges to the court's jurisdiction, to the government's authority to prosecute, or to the validity of the federal laws defendant is charged with violating, are not disruptive or defiant in this sense—*unless they threaten to forestall pretrial or trial proceedings.*" *Smith*, 830 F.3d at 810 (emphasis added). Defendant's persistent advance of his identity theory has moved beyond merely filing frivolous motions, has impeded the arraignment process, and by his own account will continue, seriously threatening to disrupt future proceedings including trial.

8

Contrary to the argument of standby counsel, the court need not wait until trial to see if Defendant, true to his word, continues to press his identity theory in such a way that obstructs the conduct of the trial. *See United States v. Brunson*, 482 F. App'x 811, 818 (4th Cir. 2012) (per curiam) (rejecting the defendants' argument that the government was required to wait until the beginning of trial to make a motion for the appointment of full-time counsel). To date, the court has been unable to engage in a meaningful dialogue with Defendant regarding his case because at every opportunity he turns the discussion back to his identity argument, and there is no reason to believe Defendant will change his tactics at trial. *Id.* (explaining that requiring the Government to wait until trial to bring a motion to revoke a defendant's pro se status would materially prejudice the Government, who has incurred the expense of bringing the case to trial, and would place a burden on the court due to the likelihood of having to continue the trial). Additionally, the fact that Defendant's obstructionist conduct did not take the form of belligerence or physical violence does not change the result. The Fourth Circuit upheld the district court's revocation of the right to self-representation absent such conduct in *Brunson*, where the defendants disrupted proceedings by persisting with "nonsensical" motions and arguments at hearings, refusing to acknowledge they were the defendants named in the indictment, and indicated instead that they were "intervenors." *Id.* Finally, Defendant's right to pursue his identity theory on appeal will not be prejudiced by the revocation of his self-representation. Although standby counsel indicated he could not and would not raise such arguments, they are already preserved in the record.

It is apparent that Defendant holds a sincere belief that the Government has violated his asserted Constitutional right to use the name "Johnson-El," which he considers to be a name of his forefathers who were free people, and that the Government is trying to force on him the name "Johnson," which is not his true identity. He has had the opportunity to bring this argument before

9

the court and to seek reconsideration of the court's decision rejecting his argument, and he will have the opportunity to appeal the court's ruling. Now it is time to turn to the facts of this case and the serious charges pending against Defendant. Yet, his insistence on arguing only one issue—that he has been improperly identified by the Government—has impeded the court's ability to proceed with his case, and Defendant himself indicated he would continue to press only this argument, forecasting further obstruction at trial. Accordingly, Defendant's right to self-representation is revoked, and standby counsel shall resume full representation of Defendant in this matter.

### III. CONCLUSION

For the reasons stated herein, the Government's motion to terminate Defendant's *pro se* status [DE-45] is allowed.

SO ORDERED, this 19th day of August 2019.

Robert B. Jones, Jr.
United States Magistrate Judge